# Estate of Henry Hicks, deceased.    Appeal of Caroline Pabst.

*Married woman—Statute of limitations—Repeal—Statutes.*

The exception or proviso in the limitation Act of March 27, 1713, 1 Sm. L. 77, which prevents the statute of limitation from running against a feme covert until discoverture has come to her, was repealed by the married person's property Act of June 3, 1887, P. L. 332, substantially re-enacted in the somewhat broader Act of June 8, 1893, P. L. 344. A married woman, so far as regards her claims against all except her husband, must now sue within the time allowed her in case she were a feme sole.

*Statutes—Repeal—Rules of construction—Implied repeal.*

Where the object and reason for which a statute was passed are removed by a later enactment, there is an implied repeal of the former statute. Public policy and the duty to escape absurd results forbid any interpretation that would lead to unjust and unequal consequences, if there is any reasonable way to avoid them. The exception in the act of 1713, in favor of married women was inserted because they might not sue without the consent and joinder of their husbands. This disability was removed by the acts of 1887 and 1893, and cessante ratione cessat ipsa lex.

Argued Dec. 15, 1897.    Appeal, No. 162, Oct. T., 1897, by Caroline Pabst, from decree of O. C. Philadelphia County, Oct. T., 1895, No. 258, disallowing claim.    Before Wickham, Beaver, Reeder, Orlady, Smith and Porter, JJ.    Affirmed. Smith, J., concurs.

Exceptions to adjudication.    Before Hanna, P. J.

At the audit of decedent's estate, which was insolvent, Caroline Pabst presented a claim on a judgment note, not under seal, for the sum of $4,000 dated December 31, 1890. Decedent died June 24, 1894, and letters of administration were granted to his widow who died on the 29th of April, 1895, and upon her death letters of administration were granted to Charles F. Linde, who filed the account of her administration on March 19, 1897. The claimant was a married woman. Objection was made to the admission of her claim on the ground that it was barred by the statute of limitations, but it was allowed by the auditing judge who awarded her the sum of $727.45, to which exceptions were filed. The court in banc sustained the exceptions in the following opinion by Penrose, J.

The act of March 27, 1713, limiting the time within which actions must be brought, provides that "if any person or persons . . . . at the time of any cause of such action given or accrued shall be within the age of twenty-one years, feme covert, . . . . or beyond the sea . . . . then such person or persons shall be at liberty to bring the same actions, so as they take the same within such times as are hereby before limited after their coming to or being of full age, discoverture," etc.

The common law meaning of feme covert and coverture, which was that understood in this act, is thus explained by Blackstone, speaking of the legal consequences of marriage (1 Comm. 442): "The very being or legal existence of the woman is suspended during marriage or at least is incorporated and consolidated into that of the husband, under whose wing, protection, and cover, she performs everything, and is, therefore, called in our law-french a feme covert, fœmina viro co-operta; is said to be covert baron, or under the protection and influence of her husband, her baron or lord; and her condition during marriage is called her coverture." Coke, commenting on the word coverture, says: "For to cover in English is tegere in Latine, and is so called for that the wife is sub potestate viri, and is disabled to contract with any without the consent of the husband. Omnia quæ sunt uxoris sunt ipsius viri. Non habet uxor potestatem sui sed vir:" Co. Litt. 112a.

This disability of a married woman was complete; not only could she not sue without the consent and joinder of the husband, but her right of action, if exercised, inured to his benefit by reducing the chose in action into possession, and thus vesting it in him absolutely—though his right in this respect was taken away by the act of 1848. Hence, while her legal existence, for the purpose of enforcing her rights as against third persons was thus suspended, the act of 1713 suspended also the running of its provisions against her.

But the status of married women was wholly changed and all disabilities in the way of asserting their rights swept away by Act of June 3, 1887, P. L. 332, which declared that thereafter, "marriage shall not be held to impose any disability on or incapacity in a married woman as to the acquisition . . . . use, or disposition of property of any kind, in any trade or business in which she may engage, . . . . or her right and power to make

contracts of any kind . . . . but every married woman shall have the same right to acquire . . . . use or dispose of her property . . . . in possession or expectancy, in the same manner as if she were a feme sole . . . . and with all the rights and liabilities incident thereto . . . . as if she were not married; " power to become accommodation indorser, guarantor, or surety being, however, withheld, and the joinder of the husband in mortgages or conveyances of real estate being still required. The act further provides (section 2) that "a married woman shall be capable of entering into . . . . any contract . . . . and for suing and being sued either upon such contracts or for torts done to or committed by her, in all respects as if she were a feme sole, and her husband need not be joined with her as plaintiff or defendant; " and (section 4) that "husband and wife shall have the same civil remedies upon contracts in their own name and right against all persons for the protection and recovery of their separate property as unmarried persons; " all acts inconsistent with this act being, in express terms (section 7), repealed.

Since the act of 1887, of which the act of June 8, 1893, is, substantially, a re-enactment of all that is material to the present inquiry, a married woman in Pennsylvania is not a feme covert, in the technical sense of the term or in the sense understood in the act of 1713. The suspension of the provisions of that act in her favor was not because of her sex, but solely on account of her disabilities and the suspension of her power to enforce her legal rights during the continuance of her marriage; but cessante ratione cessat ipsa lex, and now she is, as the act of 1887 (repealing all inconsistent laws) declares, "in all respects, with regard to her property and rights of action, as if she were a feme sole; " entitled to "the same civil remedies upon contracts . . . . against all persons," as if "unmarried." She no longer, therefore, falls within the class mentioned in the saving clause of the act of 1713, or, if she does, she has "come to discoverture" by legislative enactment, and the statute runs against her from that time by its own express provision.

This was the view taken by Lord ESHER with regard to the effect of a similar statute in England (Lowe v. Fox, Law Rep. 15 L. R. Q. B. 667), and by the Supreme Court of the United States, with reference to statutes in Illinois, in Kibbe v. Ditto,

93 U. S. 674. In Castner v. Walrod, 83 Ill. 171, referred to and followed in Kibbe v. Ditto, it was said : " While the saving clause in the statute of limitations is not mentioned in the act of 1861, yet the powers conferred by the latter act so completely annihilate the existence of every reason which led to the passage of the former act, protecting a married woman from the statute of limitations, that it would be absurd to hold that the two acts could stand together." Our act, it will be recollected, repeals all acts inconsistent with its provisions.

Married women having thus been put upon the same plane as unmarried women, and the disability of coverture having been removed by legislation before the debt to Mrs. Pabst was contracted (December 31, 1890), it is obvious that she was not relieved by the saving clause in the act of 1713 from pursuing the proper remedy against her debtor within the time prescribed by that act; and as she failed to do this, and nothing has been shown to arrest the running of the statute, it follows that her claim should have been disallowed. We are compelled, therefore, to sustain the exceptions and modify the adjudication accordingly. Counsel will prepare the necessary decree.

*Error assigned* was in not allowing the claim of Mrs. Caroline Pabst as awarded by the auditing judge.

*J. H. Grater*, for appellant.—The only question is as to whether the claim of Mrs. Caroline Pabst was barred by the statute of limitations. It is contended that the court below was in error in holding that the act of March 27, 1713, was repealed by the act of June 3, 1887. All that was intended by the latter act was to secure married women the right to control and dispose of their separate property, citing Whalen v. Gabell, 20 W. N. C. 274; Real Est. Co. v. Roop, 132 Pa. 496 ; Vocht v. Kuklence, 119 Pa. 365; Koechling v. Henkel, 144 Pa. 215.

The act of 1887 did not repeal the act of 1713 by implication : Osborne v. Everitt, 103 Pa. 421; Dunlap v. Com., 108 Pa. 607.

The privileges of married women can be removed only by express legislation : Kennedy v. Knight, 174 Pa. 408.

It makes no difference whether the loan was to her husband or a stranger, the statute does not run until six years after the husband's death : Towers v. Hagner, 3 Wh. 48 ; Kutz's Appeal, 40 Pa. 90.

*John A. Brown*, with him *Charles E. Lex* and *William Henry Lex*, for appellees.—It has been held in a number of cases that a statute giving a married woman the right to sue and be sued as a feme sole removes the disability placed upon her to sue by reason of her coverture : Hayward v. Gunn, 82 Ill. 385 ; Castner v. Walrod, 83 Ill. 171 ; Geisen v. Heiderich, 104 Ill. 537 ; Kibbe v. Ditto, 93 U. S. 674 ; 23 Am. & Eng. Ency. of Law, 489.

It is therefore submitted that by the passage of the act of June 3, 1897, Mrs. Pabst, the claimant, had the disability removed which had been placed upon her by reason of her coverture, and that she was bound to bring suit upon her note the same as if she were a feme sole, and that her claim is barred by the statute of limitations at the expiration of six years from the time her note fell due.

OPINION BY WICKHAM, J., March 21, 1898 :

The decision in this case turns on the answer to the question, whether the exception in the limitation act of March 27, 1713, so far as it relates to married women, was repealed by the Married Persons' Property Act of June 3, 1887, P. L. 332, substantially re-enacted in the somewhat broader Act of June 8, 1893, P. L. 344. The exception or proviso in the statute of limitations prevents the statute from running against a feme covert until discoverture has come to her. The act of 1887 conferred on every married woman the right to acquire, use, and dispose of property, in possession or expectancy, together with all the rights, and subject to all the liabilities, incident to these broad powers, the same as if she were unmarried, and also provided, that she should be capable of entering into any contract, and of suing and of being sued, in all respects as if she were a feme sole, and that joinder of her husband as plaintiff or defendant was no longer necessary. It was further declared, that "husband and wife shall have the same civil remedies upon contracts in their own name and right, against all persons, for the protection and recovery of their separate property as unmarried persons." The only property and contractual rights, not extended to the wife by this act, were those of conveying or mortgaging her real estate, without her husband joining, and the becoming accommodation indorser, guarantor, or surety for another. All inconsistent acts were in express terms repealed.

The reasons appearing in the satisfactory opinion of the orphans' court, as well as others which suggest themselves to our own minds, lead to the conclusion that a married woman, so far as regards her claims against all except her husband, must now sue within the time allowed her in case she were a feme sole. Section 4 of the act of 1887, reincorporated in section 3 of the act of 1893, gave her " the same civil remedies upon contracts " as if she were unmarried, neither more nor less. A man or a single woman must usually bring suit on a promissory note, or other contract not under seal, within six years after the cause of action has accrued, but it is in effect contended by the appellant that a married woman, although no good reason therefor can now be given, may wait half a century or more, the time depending on the length of her husband's life, and then successfully sue, for interest and principal, on all the stale claims she may have laid aside to ripen into invulnerability through the almost unavoidable loss of defensive proof.

We must assume that the legislature, when it declared by the act of 1887 that a married woman should have precisely the same remedies as one unmarried, and announced the repeal of all inconsistent acts, intended to wipe out, to the extent already indicated, the exception in the act of 1713. To hold otherwise would give her, not only the remedial rights possessed by unmarried persons, but as well a special and now needless privilege to which, as a married woman, she was entitled before. Except where the contrary is expressed, we cannot think it was the purpose, when practically removing all her disabilities, to put or leave her in a better situation than is occupied by members of the same class to which she now belongs. It would be a reproach to the law to have it said that of two neighboring merchants, each sui juris, and having equal rights to make and enforce contracts, the remedy of the one should exist for only six years, while the other could bring suit, and recover, perhaps as late as the middle of the next century. Public policy and the duty to escape absurd results forbids any interpretation that would lead to such unjust and unequal consequences, if there is any reasonable way to avoid them.

The exception in the act of 1713, in favor of married women, was inserted because they might not sue without the consent and

joinder of their husbands.   That disability was removed by the
acts of 1887 and 1893, and cessante ratione cessat ipsa lex.

" Where the object and reason for which a statute was passed
is removed by a later enactment, there is an implied repeal of
the former statute : " 23 Am. & Eng. Ency. of Law, 489.   It can-
not be disputed that the appellee, owing to the change in the
law, is as fully discovert, so far as the right to bring suits
against all, save her husband, is concerned, as though he were
dead.

The English Statute of Limitations of 21 Jac. 1, chap. 16,
sec. 3, contains an exception in favor of married women simi-
lar to that found in our act of 1713.   In the Married Woman's
Property Act of 45 and 46 Victoria, chap. 75, sec. 2, passed
August 18, 1882, it is provided, inter alia, that a married
woman is capable of "suing and being sued, either in con-
tract or in tort, or otherwise in all respects as if she were a feme
sole."   It was held in Lowe v. Fox, Law Rep. 15 L. R. Q. B.
667, that the removal, by this act, of a married woman's disabilty
to sue, removed her discoverture in the sense wherein we are
here considering it, and Weldon v. Neal, 51 L. T. N. S. 289, is
to the same effect.   In the latter case it was said, " A married
woman then was entitled to bring her action, within such times
as were limited by the statute, after being discovert.   In other
words a married woman had her rights of action reserved until
she was in a position to sue in her own name.   Then came the
Married Woman's Property Act of 1882, subsec. 2 of sec. 1 of
which, gave every married woman the right of suing either in
contract or in tort, in all respects as if she were a feme sole."
In both of these cases it appears to have been assumed, that she
was bound, after the act of 1882 went into effect, to bring her
action within the times fixed by the general provisions of the
statute of limitations.   Authorities of the highest character,
in this country, bearing on the meaning and effect of statutes
like our own, sustain the same view : Hayward v. Gunn, 82 Ill.
385 ; Castner v. Walrod, 83 Ill. 171 ; Enos v. Buckley, 94 Ill.
458 ; Ong v. Sumner, 1 Cin. (O.) 424 ; Cameron v. Smith, 50
Cal. 303 ; Ball v. Bullard, 52 Barb. 141 ; Brown v. Cousens, 51
Me. 301 ; Kibbe v. Ditto, 93 U. S. 674. L. ed. 23–1005.   The
same conclusion is well expressed in Endlich and Richards on
Married Women, 423.

It is but fair to say, however, that the contrary has been held in Mississippi, Arkansas and North Carolina: McLaughlin v. Spengler, 57 Miss. 818; State v. Smith, 83 N. C. 306; Hershy v. Latham, 42 Ark. 305, and that Ball v. Bullard, supra, was not followed in the later case of Clark v. McCann, 18 Hun, 13.

Being of the opinion that this dispute was rightly decided in the court below, the decree is affirmed and the appellant directed to pay the costs of the appeal.

SMITH, J., concurring:

When our statute of limitations of March 13, 1713, was enacted, the right of property in a chose in action owned by a woman, and her power to sue for it, were suspended and might be extinguished by her marriage. During coverture the husband alone could reduce it to possession, and having done this the property rested absolutely in him. Such was the law also as to a chose accruing to her during coverture, except with respect to a personal tort. The wife had neither a right of property that would sustain an action nor capacity to sue. The husband could sue alone for her choses accruing during coverture, or at his election the wife might be joined as plaintiff. The wife might be joined, also, in suits for choses owned by her while sole, but on the question whether this was necessary the cases do not seem entirely consistent: Hayward v. Hayward, 20 Pick. 517; Cummings v. Cummings, 143 Mass. 340; Wintercast v. Smith, 4 Rawle, 177; Hertzog v. Hertzog, 29 Pa. 465; Tritt v. Colwell, 31 Pa. 228; Grebill's Appeal, 87 Pa. 105. The criterion commonly laid down is that "Where the action will survive to her, she may be joined; where it must necessarily survive to her, she must be joined:" 2 Kent's Com. 131; 7 Watts. 113. These rights were exceptional and are not material here, since the wife could not require the husband to sue, either with or without joining her, and the joinder gave her no right to the money recovered if the husband chose to take it. If the husband died without having reduced the wife's choses to possession, her right of property and of action revived. It was because of this modification of the wife's ownership of her choses in action, and her inability to reduce them to possession during coverture, that, as to choses accruing or maturing during coverture, an exception in

the statute saved to the wife her remedy by action in the event of the restoration of her right of property and her capacity as a suitor by discoverture.

The act of April 11, 1848, abolished the common law effect of coverture on the wife's property rights, except as to the husband's tenancy by the curtesy, and section 39 of the act of April 25, 1850, provided that the remedy by suit should be in the name of husband and wife, to the use of the wife, with the recovery for her exclusive benefit.   By the acts of February 22, 1718, and May 4, 1855, a wife might, under certain circumstances, acquire a feme sole trader's rights of property and of action; and by the acts of April 11, 1856, and June 11, 1879, she might in certain cases sue alone, and even sue her husband. The acts of 1887 and 1893 gave her the right to sue alone as if unmarried, except that she might sue her husband only for certain causes.   The effect of these acts has been to restore to the wife the right of property and the capacity as a suitor which, as the law stood at the enactment of the statute of limitations, were suspended or extinguished by marriage.   The right of action which, by the saving clause of the statute, was preserved to await discoverture, has by the acts of 1887 and 1893 been fully secured to her during coverture.   The exception no longer serves any beneficial purpose, since nothing remains to be saved by it.   The qualified remedy which it provided has been superseded by the absolute remedy given by these later statutes.   A postponement of the wife's right of action until discoverture is inconsistent with her right to sue during coverture.   Being founded on a disability no longer existing, its retention cannot be deemed within the legislative intent as indicated by the acts removing the disability.

Judgment affirmed.