## H. B. Nissley, Administrator d. b. n. c. t. a. of Rebecca Nissley, deceased, Appellant, *v.* Isaac H. Brubaker, Administrator of Isaac Brubaker, deceased.

*Married women—Statute of limitations—Acts of March* 27, 1713, *and June* 3, 1887.

The Act of June 3, 1887, P. L. 332, which conferred upon married women the right to sue and be sued in the same manner as if they were single, operated as a repeal of the proviso in the limitation act of March 27, 1713, which prevents the statute of limitations from running against married women until they become discovert.

Where a debt was due to a married woman prior to the act of June 3, 1887, the statute of limitations began to run against her from and after the date of the act.

*Statute of limitations—Evidence—Offer of proof.*

An offer to prove that a debtor had received the money of his creditor, and had never paid it over, and that he had made an admission to that effect while the statute of limitations was running, but before it had closed, should not be rejected broadly, because the words in which the admission was made are not set forth in the offer, but the evidence under the offer should be admitted, and if it then appeared that it was not sufficient to establish the legal liability of the declarant the court could readily so instruct the jury.

Evidence in an action by an administrator de bonis non cum testamento annexo, where the question of limitations is an issue, to show that the executor of deceased was notified to bring the action, but refused, is immaterial.

Admission of one that he received money belonging to his daughter, made thirty years before action therefor, is not admissible in evidence.

Argued May 17, 1899.   Appeal, No. 197, Jan. T., 1899, by plaintiff, from judgment of C. P. Lancaster Co., Nov. T., 1894, No. 7, on verdict for defendant.   Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Reversed.

Assumpsit for money had and received.   Before LIVINGS-TON, P. J.

At the trial plaintiff offered to prove by Samuel B. Nissley that " before six years had expired from the passage of the act of 1887, he had an interview with Isaac Brubaker, in the presence of Rebecca Nissley's husband, H. B. Nissley; that, in that interview, he admitted that he was with his daughter on or about April 1, 1873, when she passed title for the property near Landisville, this county, to one John Rohrer, and that, when the purchase money was paid, he, Isaac Brubaker, undertook to act for his daughter and receive the $3,045 of the purchase money, which he admitted at this interview in the presence of H. B. Nissley with a witness that he had never repaid to her." The offer was objected to by defendant; disallowed and bill sealed for plaintiff. [5]

Plaintiff offered to prove by Samuel B. Nissley that Henry N. Eby, executor of Rebecca Nissley, was notified from time to time to bring suit for the recovery of this claim, and that he refused and neglected so to do, and that he was notified shortly after the death of Rebecca Nissley to bring it.

The offer was objected to by defendant, disallowed and bill sealed for plaintiff. [6]

Samuel B. Nissley was asked:

" Q.  Did or did not he admit to you that these checks represented part of the purchase money of Rebecca's property, which she had sold to John Rohrer? "

This question was objected to by defendant, disallowed and bill sealed for plaintiff. [7]

" Q.  Did he or not admit to you that he drew the money on these two checks; that the money belonged to Rebecca Nissley and that he has never repaid it to her?"

This question was objected to by defendant, disallowed and bill sealed for plaintiff. [8]

" Q.  Did he or not admit to you that he was present with his daughter at the time the checks were given and was acting for her and received the money for her?"

This question was objected to by defendant, disallowed and bill sealed for plaintiff. [9]

Plaintiff offered to prove by A. F. Root that Isaac Brubaker admitted that he had received $5,000 of moneys. belonging to Rebecca Nissley and had lent it for her to J. Hoffman Hershey, for a period of five years, without interest, and that he agreed that he would account and pay to her the interest whenever called upon to do so on the said sum of $5,000.

This question was objected to by defendant, disallowed and bill sealed for plaintiff. [10]

Plaintiff offered to prove, by A. F. Root, that Isaac Brubaker, the decedent, admitted to him, in the presence of Benjamin Root, Sr., deceased, about April 1, 1868, that he had received $5,000 of moneys belonging to Rebecca Nissley, and had invested same for her with one J. Hoffman Hershey, for a period of five years, without interest, in consideration of some advantage to him, Isaac Brubaker; and that he, Isaac Brubaker, said, in the presence of the witness on the stand, that he could, or would, reach into his pocket and pay the interest on this money to his daughter Rebecca Nissley; that this conversation occurred about a mile this side of Salunga; and that this information was not communicated by the witness to any one until more than two years after the death of Rebecca Nissley.

This offer was objected to by defendant, as it is thirty years ago, disallowed, and bill sealed for plaintiff. [11]

The court charged as follows :

[The testimony has been closed on the part of the plaintiff, and there being nothing upon which we can direct a verdict in favor of the plaintiff, we shall have to tell you that your verdict should be for the defendant in this case. No evidence has been offered in our judgment to sustain a verdict for the plaintiff. The clerk will take the verdict for the defendant.] [12]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (5–11) rulings. on evidence, quoting the bill of exceptions ; (12) charge of the court, quoting it.

*J. Hay Brown*, of *Brown & Hensel*, for appellant.—It needs

no citation of authorities to show that under the old law the statute did not run against a married woman's claim, and it only remains to be considered whether the act of 1887 could repeal that privilege by implication. It has been repeatedly decided that no more was intended by the act of 1887—of which the act of 1893 is only an amplification—than to secure to married women the right to control and dispose of their separate property. It was an act for their benefit, enabling in its character. It was not intended to impress new disabilities upon them: Whalen v. Gabell, 20 W. N. C. 274; Real Est. Co. v. Roop, 132 Pa. 496; Vocht v. Kuklence, 119 Pa. 365; Koechling v. Henkle, 144 Pa. 215.

The conferring of one right does not take away the other by implication. When there are no words of repeal, and two rights are not in hostility with each other, both acts may coexist without any conflict: Osborne v. Everitt, 103 Pa. 424; Hershy v. Latham, 42 Ark. 305; McLaughlin v. Spengler, 57 Miss. 818; State v. Smith, 83 N. C. 619; State v. Troutman, 72 N. C. 551; Campbell v. Crater, 95 N. C. 156.

The statute of limitations does not begin to run until a right of action is complete. A cause of action does not exist unless there be a person in existence capable of suing or being sued: Mitchel's Est., 1 Pearson, 429; Marsteller v. Marsteller, 93 Pa. 350; Winters v. DeTurk, 133 Pa. 359.

All authorities seem to agree that under the act of 1887 the statute should be deemed to begin to run against a married woman only at the time the act passed. " She became a party capable of maintaining a suit immediately upon the approval of the act of 1887. The statute would, therefore, by implication from our own authorities, begin to run at that time: " Endlich & Richards on Married Women, sec. 347; Weldon v. Neal, 51 L. T. N. S. 289; Lowe v. Fox, L. R. 15 Queen's Bench Div. 667.

Mrs. Nissley was made discovert, for the purposes of the suit in hand, on June 3, 1887. Within six years from that period the defendant made acknowledgment of his debt to her estate, so that the right of action to her administrator then accrued, and the suit, having been brought within less than eighteen months from that time, could be maintained. The offer which is made subject of the fifth assignment was therefore undoubtedly erroneously excluded and the judgment must be reversed.

*S. P. Eby* and *H. M. North*, for appellee.—A married woman, so far as regards her claims against all except her husband, must now sue within the time allowed for her in case she were a feme sole: Hicks's Est., 7 Pa. Superior Ct. 274.

OPINION BY MR. JUSTICE GREEN, July 19, 1899:

We are very clear that the Act of June 3, 1887, P. L. 332, which conferred upon married women the right to sue and be sued in the same manner as if they were single, operated as a repeal of the proviso in the limitation act of March 27, 1713, which prevents the statute of limitations from running against married women until they become discovert. We consider this conclusion inevitable because a right to sue is fundamentally inconsistent with a disability to sue, and by consequence removes the disability. It follows, therefore, in the present case, that a right of action accrued to Mrs. Nissley to recover any money that might be owing to her by her father, immediately after the passage of the act of June 3, 1887. This being so, the statute of limitations began to run against her from and after the date of the act of June 3, 1887. See Hicks's Estate, Pabst's Appeal, 7 Pa. Superior Ct. 274. Recurring now to the offers of proof in this case, we find that the offer covered by the fifth assignment was to prove that within six years from June 3, 1887, Isaac Brubaker, deceased, admitted to the witness in the presence of Rebecca Nissley's husband that he was with his daughter about April 1, 1873, when she made title to John Rohrer for a piece of real estate belonging to her, and that when the purchase money, $3,045, was paid it was received by him and that he had never paid the money to his daughter. This was a specific, definite offer to prove that the deceased had received the money of his daughter and had never paid it to her, and that the admission of the deceased to that effect was made while the statute of limitations was running, but before it had closed. The words in which the admission was made were not set forth in the offer, but the offer was rejected just as it was made, without objection on account of the omission of the precise words used. The inquiry results whether the offer should not have been received. The fact that Isaac Brubaker had received in 1873, $3,045 of money which belonged to his daughter, and that he had never paid it to her, was certainly

a most important and relevant fact. It was of course competent to prove such a fact before the jury. Whether the proof when received would be sufficient to establish his legal liability to repay the money at the time this suit was brought, would depend upon just what was said at the time. If the words used were consistent with a promise to pay the debt they would suffice to toll the running of the statute. But that could only be known after the testimony was heard. We think therefore that it was error to reject the offer in the broad manner in which it was made. The proof was competent, for it consisted of the party's own declarations, the subject-matter was competent, because it tended to establish, or rather to confirm, a cause of action which was then pending. If, after it was all in, it was not sufficient to establish the legal liability of the declarant the court could readily so instruct the jury. But we do not think it can be said that the offer should be rejected entirely. The matter offered would, in any event, be part proof of facts essential to the plaintiff's right of recovery and, for that reason, it would be admissible. If on the rendition of the testimony it contained enough matter to toll the statute, or if it was followed by further testimony to that effect, it would or might authorize a recovery. For these reasons we sustain the fifth assignment. The first four assignments cover the substance of the fifth in detached parts and, therefore, would include the same matter in the aggregate, and hence the offers should have been received. These assignments are therefore sustained. The sixth assignment is not sustained as its subject-matter is of no consequence. The tenth and eleventh assignments are rejected as the matter of the tenth has no date, and of the eleventh has a date so remote that it would be of no consequence if received. The twelfth assignment cannot be sustained because in the state of the evidence as it stood then the charge was entirely correct.

The offers of proof covered by the seventh, eighth and ninth assignments, we think should have been received. They tended to prove the actual receipt of the money which was paid to Isaac Brubaker for his daughter's property, and which prima facie tended to show a liability on his part to account for it. We therefore sustain these assignments.

Of course after all the testimony rejected on the trial has been received, it may not suffice to create a legal liability at

the time of the bringing of this suit. On the other hand, it may suffice to establish such a liability, and for that reason it should have been received.

Judgment reversed and a new venire awarded.