310

Moore *v.* Howard P. Foley Company, et al., Appellants.

Argued September 10, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Robert St. Leger Goggin,* with him *Marshall, Dennehey & Warner,* for appellant, Howard P. Foley Company, at No. 385.

*John F. McElvenny,* for appellant, William Armstrong & Sons, Inc., at No. 419.

*Joseph I. Fineman,* for appellee.

OPINION BY VAN DER VOORT, J., June 24, 1975:

Appeal is taken to this Court from denial of appellants' motions for new trial and judgment n.o.v. Trial had been held on March 27, 1973, at which time certain eyewitness and expert testimony was heard. The jury returned a verdict against appellants Foley and Armstrong. Each appeal will be discussed separately within.

THE APPEAL OF HOWARD P. FOLEY COMPANY

Foley was the electrical subcontractor in the construction of Strawbridge & Clothier's store at the Ply-

mouth Meeting Mall in Montgomery County, Pennsylvania. The appellee was employed by Armstrong which was the plastering subcontractor. On September 24, 1965, the appellee was pushing a wheelbarrow loaded with plaster along a floor when the wheelbarrow struck a conduit sticking up through the cement floor forcing the handle of the wheelbarrow into his groin and causing severe injuries. A jury returned a verdict in favor of the appellee and against Foley and Armstrong in the amount of three hundred thousand ($300,000.00) dollars. Motions for a new trial and judgment n.o.v. were denied and this appeal was taken. The appellee filed his suit on May 5, 1967 against Foley who filed a complaint on December 7, 1970 to join Armstrong.[1]

Foley (who will be designated appellant hereinafter) served upon appellee continuing interrogatories on August 4, 1967, asking for the names and addresses of all physicians who had examined the appellee.[2] In answering these interrogatories, appellee gave the names and addresses of ten physicians, but never gave the appellant the name and address of Dr. Benjamin A. Gouley of Philadelphia.[3] A jury trial was held commencing on March 27, 1973. On the first day of the trial, appellant learned that Dr. Gouley had examined appellee on October 26, 1972, had made a report on February 8, 1973, and that appellee intended to call him as a witness. On the second day of the trial, Dr. Gouley was called as a witness for appellee. Appellant objected to his testifying because there had been no disclosure by the appellee of this expert witness. The trial judge permitted Dr. Gouley to testify.

---

1.   Armstrong was not finally joined until October 7, 1971.

2.   These inquiries were covered by questions number 10, 12 and 28 of appellant's interrogatories.

3.   By letter of October 5, 1972, counsel for appellant again asked counsel for appellee for any other medical reports, if there were any.

In his testimony Dr. Gouley said that appellee had suffered as a result of his injuries among other things a myocardial infarction, commonly known as a heart attack, and also pulmonary emphysema. This was the first notice, $7\frac{1}{2}$ years after the accident, that appellant had of appellee's claim for the injuries of myocardial infarction and pulmonary emphysema.[4] He testified further that the myocardial insufficiency was one of *the two* important injuries sustained by appellee in his accident of September 24, 1965.

We have a situation in which counsel for the appellee knew that Dr. Gouley had examined appellee on October 26, 1972, five months before trial. He also knew that Dr. Gouley had made a report in which he noted myocardial infarction and pulmonary emphysema on February 8, 1973, more than six weeks prior to trial; notwithstanding this knowledge he never disclosed the name of Dr. Gouley to the appellant or his counsel until the first day of the trial. All indications are that there was a wilful failure to file sufficient answers to the written interrogatories. The Pennsylvania Rules of Civil Procedure provide, in part, that where "a party wilfully fails to file answers or sufficient answers to written interrogatories served under Rule 4005," the court may make an appropriate order.[5]

In *Nissley v. Pennsylvania Railroad Company*, 435 Pa. 503, 259 A.2d 451 (1969), the Supreme Court of

---

4. Dr. Gouley said in his written report that the pulmonary emphysema was a "late and largely independent development . . ." He testified that he "can't absolutely be sure of advanced emphysema." (T. 63A) and later, "that the accident definitely was involved in promoting the pulmonary emphysema in the case." (T. 75A) At another point, the doctor was asked if he could relate the moderately advanced pulmonary emphysema to the accident with a reasonable medical certainty. He replied: "that is a point I can't be absolutely sure of."

5. Pa. R.C.P. 4019 (a) (1) and (c) (2).

Pennsylvania discussed the necessity for disclosing the identity of expert witnesses. In *Nissley,* the plaintiff refused to answer an interrogatory relating to his expert witness Dr. Mead. The Court, in *Nissley,* stated as follows: "The calendar judge was in error in denying the Railroad's motion to compel the plaintiff to answer the interrogatory, and the trial judge compounded this error by allowing the surprise witness to testify.

"The element of surprise is particularly crucial given the nature of this case. It is agreed that a causal relationship between Nissley's accident and his death from leukemia was the principal issue for trial. In such a case the jury is confronted with complicated, often bewildering, medical testimony. Inevitably, the weight which jurymen give to conflicting testimony will reflect the apparent expertise of the witnesses. In such a case the credentials and qualifications of a witness will be matters of great import and any demonstrable discrepancies in the qualifications claimed by the witness will greatly affect his credibility. In such a case, therefore, it is of particular importance that the identity of expert witnesses be known in advance so that full examination of their qualifications may be made. This case is an excellent example of the need for such a rule, for Dr. Mead's theories are not accepted by the vast majority of the medical profession." 435 Pa. at 508-509.

In *Nissley,* the principal issue was the causal connection between the accident and the death of plaintiff's decedent from leukemia. In the instant case, the principal issue is whether or not the myocardial infarction and pulmonary emphysema were caused by the accident. The type of issue is the same and we hold that the trial judge erred in allowing Dr. Gouley to testify.[6] The trial judge

6. One of the principal physicians treating the appellee was Dr. Eugene M. Schloss who had died several months (the exact date is not ascertainable from the record) before the trial. The

ruled that he was not required to exclude the testimony of Dr. Gouley and that since Dr. Schloss had stated in his report of December 10, 1966, that appellee had suffered heart strain and exertional angina, the appellant was on notice of the myocardial infarction. There is a vast difference between heart strain, together with exertional angina, and a myocardial infarction. The notice of the former would not be notice concerning the latter.

We find that the appellant was unfairly treated in this trial by the testimony of the concealed witness, Dr. Gouley.

## THE APPEAL OF WILLIAM ARMSTRONG & SONS, INC.

William Armstrong & Sons, Inc., appeals from the judgment and award against it, arguing that the lower court erred in permitting its joinder as additional defendant. This issue was first raised by preliminary objections, which were dismissed, and then in defense to the complaint by way of answer and new matter. The argument was preserved by Armstrong's motions for new trial and for judgment n.o.v.

Estie Moore filed suit against Foley on May 5, 1967, and Foley was served by the sheriff on the same day. On November 10, 1970, Foley filed a petition to join Armstrong as an additional defendant alleging alternatively that Armstrong was solely liable to the appellee, or was jointly and severally liable, or liable over to Foley. The petition was granted, without prejudice to the rights of Armstrong, on November 16, 1970. Foley's complaint against Armstrong was filed on December 7, 1970, and reinstated on January 19, 1971, and service effected thereafter. On June 28, 1971, Armstrong filed preliminary ob-

---

trial court should at least have excluded the testimony of Dr. Gouley as to the myocardial infarction and the pulmonary emphysema.

jections to the complaint alleging that the joinder was untimely and, therefore, improper. Finally, on October 7, 1971, the lower court dismissed Armstrong's preliminary objections. Thus, approximately three years and six months after the institution of the underlying suit, Armstrong was brought into this case as an additional defendant.

Rule 2253 of the Pennsylvania Rules of Civil Procedure, 12 P.S. Appendix, provides:

> "Neither praecipe for a writ to join an additional defendant nor a complaint if the joinder is commenced by a complaint, shall be filed by the original defendant or an additional defendant later than sixty (60) days after the service upon the original defendant of the initial pleading of the plaintiff or any amendment thereof unless such filing is allowed by the court upon cause shown."

The issue of whether cause is shown for the granting of an extension of time within which joinder of an additional defendant is permissible is largely a matter within the discretion of the trial court. *Zakian v. Liljestrand*, 438 Pa. 249, 264 A. 2d 638 (1970).; *Marnell v. Cross*, 372 Pa. 82, 92 A. 2d 688 (1952). Furthermore, the decision of the trial court will not be reversed unless it is shown that it abused its discretion. *Zakian v. Liljestrand, supra; Marnell v. Cross, supra.*

The Pennsylvania Supreme Court has stated that since Rule 2253 neither specifies what is sufficient cause for an extension nor what factors should govern the court's consideration of such a petition, the court should, therefore, "be guided by the objectives sought to be achieved by use of the additional defendant procedure in conjunction with the purpose for which a 60-day limitation was placed on its unrestricted use." *Zakian v. Liljestrand, supra,* 438 Pa. at 256. In essence, these rules are designed to dispose of matters involving numerous parties in a simple and expeditious manner "without

subjecting the original plaintiff to unreasonable delay in the prosecution of his portion of the litigation." *Zakian v. Liljestrand, supra.*

The primary "cause" relied upon by Foley for this three and one-half year delay is inadvertence of counsel. Foley submits that when its former counsel took the appellee's deposition on November 3, 1967, it learned for the first time of Armstrong's relation to the case and its necessity as an additional defendant. The delay in not joining Armstrong at that time is attributed by Foley to the inadvertence of its former counsel. Foley argued that when its present counsel entered his appearance on September 9, 1970, he immediately took the necessary steps to secure the joinder of Armstrong. Armstrong urges upon this Court that inadvertence of counsel does not constitute "cause shown." Armstrong also contends that it was substantially prejudiced by this late joinder because the foreman who allegedly sent the appellee on the ill-fated mission which precipitated this litigation, died in 1969.

Although the three and one-half year delay after the expiration of the 60-day period prescribed in Rule 2253 is a long time, this, in and of itself, is not determinative. *Zakian v. Liljestrand, supra.* We are constrained to conclude, however, that in light of the attendant circumstances, the lower court abused its discretion in permitting this late joinder.

We believe that a petition for an extension of time to join an additional defendant must allege some reasonable justification for the delay. We further hold that the inadvertence of former counsel is not of itself adequate justification. In *Shimer v. Jacoby,* 30 Northampton 326, 331 (1946), the court cogently expressed our sentiments in this regard when it stated:

"Were we to hold that inadvertence of counsel is sufficient cause for extension of time, all time limits prescribed by Penna. Rules of Civil Procedure would

be rendered meaningless in that any delay on the part of the negligent party or his counsel could be excused by an averment of inadvertence. The excuse of inadvertence cannot be raised to the dignity of a cause without abrogating prescribed time limits and permitting parties to respond in court at their convenience."

The extent of power in our lower courts to allow digressions from strict compliance with the 60-day limit specified in Rule 2253 need not now be determined. It is sufficient in the instant appeal that in the circumstances presented, the lower court abused its discretion in permitting the joinder of Armstrong as an additional defendant.

As to the case against Foley, the award as to damages only is vacated and the case is remanded for new trial solely as to this issue.

As to the case against additional defendant Armstrong, it is ordered that judgment against Armstrong be vacated, and the case is remanded with instructions to enter judgment in favor of Armstrong.[7]

———

CONCURRING AND DISSENTING OPINION BY CERCONE, J.:

I concur in all aspects of the majority opinion with the exception of its action in awarding a new trial to appellant Foley on the issue of damages.

The Pennsylvania Rules of Civil Procedure, 12 P.S. Appendix, do not require that sanctions be imposed for a party's failure to disclose the names of witnesses. Whether or not sanctions are to be imposed is a matter resting within the discretion of the trial court. *Tener v.*

———

7. The granting of judgment non obstante veredicto as to Armstrong is without prejudice to such rights as Foley may have against Armstrong for contribution.

*Loblaw, Inc.,* 207 Pa. Superior Ct. 337 (1966). Therefore, the issue for our consideration is: Did the lower court abuse its discretion in permitting Dr. Gouley to testify concerning the appellee's subsequent myocardial infarction and pulmonary emphysema? I would hold that the trial court did not abuse its discretion.

In *Nissley v. Pennsylvania Railroad Company,* 435 Pa. 503 (1969), *cert. denied* 397 U.S. 1078 (1970), it was held that the trial judge erred in permitting a surprise witness to testify. *Nissley* does not stand, however, for the principle that all "surprise" witnesses are precluded from testifying. Each case presents unique problems whose solution rests best in the discretion of the trial court. In *Nissley,* the aggrieved party did not learn of the surprise witness' existence until the very day he testified. In the case at bar, Foley learned that Dr. Gouley would be a witness for the plaintiff prior to *any* testimony being taken, and at least two days prior to when Dr. Gouley actually took the stand. At no time did Foley request either a continuance or recess. In *Nissley,* the Supreme Court emphasized the fact that the witness' testimony was in conflict with that of other expert witnesses; and, therefore, it was crucial that the aggrieved party know of his identity in advance so that his qualifications could be scrutinized. In the instant case, the witness (Dr. Gouley), was a highly qualified and respected specialist in the field of cardiovascular diseases.[1] It is inconceivable that Foley could have damaged the witness' credibility by attacking his credentials.

Furthermore, I am of the opinion that the prior medical reports, which Foley had in its possession for several years, made it quite apparent that the plaintiff sustained extensive cardiological damage. These reports

---

1. Among his other qualifications, Dr. Gouley was Emeritus, Chief of Medicine, Einstein Medical Center; a past instructor at the University of Pennsylvania Medical School; and former Chief Coroner's physician for the City of Philadelphia.

stated, inter alia, that: (1) Plaintiff's cardiovascular silhouette was that of hypertension and arteriosclerosis; (2) Plaintiff had cardiac enlargement; (3) Plaintiff's aorta was prominent; and (4) Plaintiff suffered exertional angina. While these reports contained no specific reference to myocardial infarction, I believe that they did contain sufficient information of serious cardiological problems to place Foley on notice as to the extent of plaintiff's heart damage. Indeed, a plea of surprise is entirely inconsistent with and contradicted by Foley's own motion for a physical examination filed six months prior to trial. The first sentence of Foley's motion for an examination of the plaintiff states: "Plaintiff has commenced an action against defendant alleging *serious internal, psychiatric and cardiological injuries.*" (Emphasis added). As the lower court stated: "Any discrepancy between prior medical reports and the testimony permitted at trial was merely a difference in degree—not a difference of kind—and it was a proper exercise of the Court's discretion to allow Dr. Gouley to testify fully."

Accordingly, I must respectfully dissent from the majority's implicit conclusion that the lower court abused its discretion in permitting the witness to testify. I would affirm the lower court's judgment against appellant Foley in all respects.

WATKINS, P. J., and PRICE, J., join.