# Stern v. Jim Bulow Motors

*John J. Dirienzo, Jr.,* for plaintiff Stern.
*Jon A. Barkman,* for plaintiff Moran.
*Joseph J. Bosick,* for defendant International Harvester.
*James Munro,* for defendant Rockwell.[1]
*William R. Tighe,* for additional defendant Thiele.
*Howard K. Hilner,* for additional defendant Hendrickson.

COFFROTH, *P.J.,* June 18, 1984—This case is here on the preliminary objections of additional defendant Hendrickson to the joinder complaint of defendant Rockwell against Hendrickson.[2] The instant objections challenge the joinder of Hendrickson on the ground of lateness under Civil Rule 2253, which provides as follows:

"Neither praecipe for a writ to join an additional defendant nor a complaint if the joinder is commenced by a complaint, shall be filed by the original

---

1. Mr. Yelovich entered his appearance for Rockwell on February 27, 1981. Robert G. Rose, Esq., entered his appearance for Rockwell on February 14, 1983.

2. This case was previously before the court on unrelated matters between Moran Trucking, Inc., and International Harvester. 42 Somerset L.J. 190 (1983).

defendant or an additional defendant later than 60 days after the service upon the original defendant of the initial pleading of plaintiff or any amendment thereof unless such filing is allowed by the court upon cause shown."

The initial pleadings of plaintiffs (complaints) were served on defendant Rockwell on June 11, 1981 (no. 14) and on June 24, 1981 (no. 15), and no amendment thereof has been filed. On August 4, 1983, defendant Rockwell filed the following:

(1) Petition to join Hendrickson as additional defendant to avoid multiplicity of suits on the issue of whether Rockwell or Hendrickson manufactured the bolt whose defective condition is alleged by plaintiffs to have been the cause of injury, and alleging nonobjection to the joinder by plaintiffs, defendant International Harvester and additional defendant Thiele. On the same date, the court (Coffroth, P.J.) made a chambers order stating that ". . . the time for joining an additional defendant be extended for 10 days from this date."

(2) A complaint by defendant Rockwell joining Hendrickson as an additional defendant, to which the pending preliminary objections are made. The ground for relief set forth in the preliminary objections is that the joinder complaint ". . . was filed over 25 months after it [Rockwell] had been served with a copy of the plaintiffs' complaint," and that the joinder order of August 4, 1983, was entered without any "cause shown" as required by Civil Rule 2253.[3]

(3) Petition for leave to file responsive pleadings to the pleadings of plaintiff, defendant International

---

3. Additional defendant Thiele was joined by defendant International Harvester by praecipe filed August 24, 1981, and joinder complaint filed November 23, 1981.

Harvester and additional defendant Thiele, with consent of those parties.

## DISCUSSION

We should first note the presence in this case of the following salient factors bearing upon propriety of the joinder in question: ,

(1) Joinder of additional defendant occurred (August 4, 1983) more than 25 months after the second complaint (no. 15) was served on defendant Rockwell (June 24, 1981).

(2) The petition for extension of time for joinder, and the joinder complaint, were filed and the petition was approved by the court, with the consent of all existing parties to the action, including plaintiffs, without notice to Hendrickson, the party to be joined.

(3) The petition for late joinder states no reason or explanation for the delay, nor has any such reason or explanation been given.[4]

(4) The only reasons given for the joinder in the petition for joinder, and in the brief filed in support, are that: (a) defendant Rockwell has discovered that the defective bolt which allegedly caused plaintiffs' harm was manufactured by Hendrickson rather than by Rockwell (as alleged by plaintiffs), without stating when or the circumstances under which such discovery was made, and (b) joinder will simplify and expedite disposition of the cases by

---

4. The joinder in issue followed soon after entry into the case of new Rockwell counsel, see note [1], supra, but that is not advanced as the reason for delay. In any event, that would be no excuse for delay. See Desiderio v. R&R Tire Center Inc., 242 Pa. Super. 135, 363 A.2d 1197 (1976); Moore v. Howard P. Foley Co., 235 Pa. Super. 310, 340 A.2d 515 (1975).

avoiding a multiplicity of suits without unreasonable delay for plaintiffs.

(5) Additional defendant Hendrickson does not allege or assert any prejudice from the lateness of the joinder.

The issue, then, is whether judicial economy is "cause shown" for late joinder under Rule 2253, where no party is prejudiced or unwillingly delayed by the lateness, even though the delay is not explained and excused.

Most of the decisions in this court on the subject are by this writer; they consistently approve late joinder of a party against whom a cause of a cause of action is pleaded, either on the primary claim of plaintiff or one so closely related thereto as to involve common questions of fact or law, where there is no prejudice from lateness and a separate action will likely result absent joinder. Only in that way can the Supreme Court's direction be followed as stated in Zakian v. Liljestrand, 438 Pa. 249, 255-256 (1970), as follows:

"The rule does not specify what is sufficient cause for an extension nor does it delineate the factors that the court should take into consideration when deliberating upon such a petition for extension. The court, therefore, should be guided by the objectives sought to be achieved by use of the additional defendant procedure in conjunction with the purpose for which a 60-day limitation was placed on its unrestricted use. In a capsule, these rules are an attempt to provide a means to simplify and expedite the disposition of matters involving numerous parties (Coppage v. Smith, 381 Pa. 400, 113 A.2d 247 (1955)) without subjecting the original plaintiff to unreasonable delay in the prosecution of his portion of the litigation."

In Coppage v. Smith, cited supra, the trial court extended the time for joinder to "avoid a multiplicity of suits" (404); in affirming, the Supreme Court emphasized (405) that the rules are not ends in themselves, and cited Rule 126 de-emphasizing procedural error in favor of a liberal interpretation in order to further substantial rights. Any other approach to "cause shown" for extension of time under Rule 2253 entraps us into narrow arguments over the assignment and evaluation of fault for delay which is really irrelevant to the question of whether the particular third-party joinder sought will advance the cause of judicial economy and efficiency for which the joinder rules were promulgated in the first place. As early as Vinnacombe v. Philadelphia et al., 297 Pa. 564, 569 (1929), the court said of the first third-party joinder statute enacted in Pennsylvania (predecessor of the present Rules of Civil Procedure):

"The Act is a remedial one. Its purpose is to avoid a multiplicity of suits; to compel every interested person to appear and defend the action by plaintiff; and to save the original defendant from possible harm resulting from loss of evidence, as might result if compelled to await the end of the suit before proceeding against those who were primarily liable in whole or in part. Hence, the statute is to be liberally construed to advance the legislative purpose." (Citations omitted.)

In determining whether "cause" is shown for extension of time under Rule 2253, the court must balance the needs of judicial economy against the effects of joinder or nonjoinder upon the substantial rights of the parties in terms of harm or prejudice, but in that balancing the objective of the rules to avoid a multiplicity of suits must be heavily weight-

ed. As we said in Metts v. Lasky, 28 Somerset L.J. 389, 393 (1973), in a related context:

"In considering these effects, we must weigh them in the balance to determine their net effect. And in that balancing, the proscription against multiplicity of suits must be given special weight in the interest of judicial economy. So much so, that there is a presumption against severance which can be overcome only by countervailing considerations of convenience or prejudice of great weight."

We articulated these views as early as 1971, before there were many appellate decisions on the question of "cause shown" under Rule 2253, in Lewandowski v. General Telephone et al., 29 Somerset L.J. 83 (1971), as follows (85-90):

"Late Joinder:

"The rule requiring joinder within 60 days unless extended by the court for cause shown states no specific causes for time extension nor any standards for the exercise of judicial discretion. Such broadness of language invests the court with wide discretion to meet varied factual situations; the absence of guidelines necessarily evokes differences in viewpoint and philosophy which judges have. Consequently considerable litigation has resulted over the question of time extension, resulting in a paradox: the additional-defendant rules which were designed to decide in one-suit claims which otherwise would require two or more suits, thereby reducing litigation, and the 60-day rule designed to prevent delay in the principal suit as a result of additional defendant joinder, have by fostering new litigations over the question of extension of time, produced more delays which are necessarily involved in litigating the time question. One wonders whether the cure may equal the disease.

"As indicated above, at the heart of the matter lie differing judicial philosophies; consequently the cases which reflect these differences in viewpoint are in some confusion. As one might expect, some decisions reveal a strict attitude toward the 60-day rule, and others a liberal attitude.

"The strict view is derived from the seemingly strict language of Rule 2253, itself, which says:

'Neither praecipe for a writ to join an additional defendant nor a complaint if joinder is commenced by complaint, shall be filed by the original defendant or an additional defendant later than 60 days after the service upon the original defendant of the initial pleading of the plaintiff or any amendment thereof, unless such filing is allowed by the court upon cause shown.'

"That negative language of restriction suggests that the 60-day period is almost a statute of limitations; many cases so treat it and such a rule is textually asserted in Anderson (Volume 4A, §2253.2) where it is said: 'The limitation imposed is mandatory and is in the nature of a statute of limitations.' Under that view late joinder is presumptively invalid placing a burden upon the moving party to show not only a good reason for allowing the joinder but also a good reason for the delay. This strict construction views the rule in a contest of the rights of litigants, that is, during the 60-day period there is a right of the moving party to join an additional defendant, but thereafter there is a right in the party proposed to be joined not to be joined unless the two-fold burden above mentioned is met.

"The liberal view takes a different tack and derives its cue from Rule 126 which says:

'The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are appli-

cable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.'

"Equity long ago recognized that the surest way to a protracted and costly disposition of controversy, and consequently frequent injustice, was by a multiplicity of suits. Additional defendant procedure was purposely designed to consolidate claims for disposition in order to avoid multiplicity. Rule 126 seeks a speedy determination; a single suit delayed by joinder proceedings is still usually speedier than two successive suits which are not consolidated for trial. Rule 126 seeks an inexpensive determination; a single suit is by definition less costly than two suits. See discussion in 3 Goodrich-Amram §2251-1. Indeed, speed and cost are inter-related, because today more than ever time is money. Time and money are of concern not only to litigants, but to the public and their courts; the shortage of time and money threatens our very system and the quality of its justice, making it imperative that speedier and less costly methods of disposing of litigation, justly, must be found and utilized. It is no longer a matter of litigant option; it is a matter of vital public concern requiring that old professional assumptions of limitless time and old habits and strategies of dawdling and footdragging must be discarded. We had occasion to remark recently in Renaldo v. Vivian, 26 Somerset L. J. 340, 355, as follows:

'Courts must see to it that their processes and facilities, provided by a generous public at great cost, do substantial justice, and that judicial resources be conserved and directed to that end. These processes and facilities are not playthings for every private stratagem. Indeed, we provide the place and facilities for the resolution of private controversy only be-

cause of the paramount public concern for justice and for the peaceful resolution of conflict, and only when those larger interests are served.'

• • •

"We subscribe to the liberal view of the 60-day rule, as Rule 126 commands: the strict view subverts fundamental public policy proscribing a multiplicity of suits. The crucial question therefore is not: Why should the 60-day period be extended? The crucial question is: 'Why, under the circumstances, should there be two litigations if one will suffice?' Kerotest v. CO, 96 LEd 200, 203. Thus, whenever there is a likelihood of a separate action against the additional defendant on the claim sought to be joined, that is ipso facto cause shown for allowing late joinder which is presumptively sufficient. The public policy supporting that cause is so weighty as ordinarily to outweigh considerations of the reason for delay: and the only real basis for refusing late joinder of a claim likely to require disposition in a separate lawsuit is demonstrable prejudice to a party resulting from the lateness of the joinder and which would not also be operative had separate suits been filed at the same time. The fact that the statute of limitations may now bar a cause of action which the joinder if allowed will embrace is argued as a reason for striking the joinder so that defendant may be relieved of liability on that cause of action; as we see it, the passage of the statute of limitations is on the contrary a reason for sustaining the joinder so that defendant may not escape at least a trial of such liability. Getting off the hook by means of the statute of limitations does not merit such tender judicial solicitude. The 60-day rule should not be viewed in terms of litigant rights; such rights are merely incidental to the larger public policy objectives of the rules (McDevitt v. Avis, 443 Pa. 49, 55).

"We are in accord with those courts which readily grant late joinder to prevent suit multiplicity where there is no palpable prejudice to a party resulting therefrom. See Mullarkey v. Lower, 49 D.&C.2d 90 (1970); Tinari v. Salmon, 24 D.&C.2d 764 (1961); Gritzer v. Goldsworthy, 52 Westmoreland 261; Whitsell v. Bills, 51 Westmoreland 67; Oslosky v. Moskus, 47 Westmoreland 269; Bentz v. Swift, 82 York 180.

"The Supreme Court has allowed the lower court wide discretion in extending the 60-day rule in the absence of gross abuse. Marnell v. Cross, 372 Pa. 82. Our view is consistent with the appellate cases which stress that the rule should be liberally construed to simplify and expedite the disposition of cases involving numerous persons and divergent interests. Zakian v. Liljestrand, 438 Pa. 249; Coppage v. Smith, 381 Pa. 400. Lapse of time alone is not determinative. Zakian, supra.

"In Bergstreser v. Stine, 47 D.&C.2d 105, 106, the court said that the 60-day rule was designed primarily for the protection of *plaintiff* so that his cause of action would not be unduly delayed by joinder proceedings, and that lateness alone is not ordinarily a factor where plaintiff does not object. In Goodrich-Amram, §2253-1, page 58, it is stated that the 60-day limit is to prevent a defendant from collusively joining a series of additional defendants to delay *plaintiff*. In Marnell v. Cross, supra, where the approval of late joinder was affirmed, the plaintiff agreed to the joinder. In Zakian, supra, it was stated that the court should be guided by the objectives of the rules, to simplify and expedite the disposition of matters involving numerous persons without subjecting the *original plaintiff* to unreasonable delay in prosecuting his claim; the court affirmed a denial of the extension, where the lower

court stressed the delay to plaintiff. In the instant case plaintiffs do not object to this joinder; the only objecting party is the proposed additional defendant.

"There is additional cause for allowance here. This action is for damages resulting from an explosion at defendant General Telephone Company's telephone building whose fixtures and equipment were furnished by several other companies named as additional defendants in this case. Bastian is an equipment supplier. A crucial problem in the case is pinpointing the cause of the explosion in relation to the various pieces of equipment in the train. The issue is technically complex: a trial can be expected to be difficult and protracted. We believe that all potentially liable fixture and equipment suppliers should be brought into the suit not only in the interest of making a complete and final determination of responsibility, if any, for the explosion, and a more understandable trial, but to avoid the revolting prospect of having to go through the case a second time as to Bastian. Such a prospect is neither speedy nor inexpensive, nor a just determination of the claims."

In general accord are: Barkman v. Washington Mutual (No. 2), 29 Somerset L. J. 93 (1971); Coleman v. Heiple (No. 2), 29 Somerset L. J. 363 (1974); Upstill v. Jamesway (No. 4 ), 33 Somerset L. J. 205 (1976); Commonwealth v. Penner (No. 2), 34 Somerset L.J. 372 (1978); Hemminger v. Benford, 34 Somerset L.J. 391, 396, note [1] (1978). We are not alone in this thinking. As stated in Goodrich-Amram2d §2253:3, at 104-105:

"Indeed, in keeping with the policy of the Rules to allow pleadings which do not prejudice any party but aid in the speedy determination of the issues, some courts have allowed joinder after the 60-day

period upon a simple showing of no prejudice to the additional defendant. . . . . Of course, if the extension will prejudice any party or delay the trial of the case the extension should be refused." Accord: County of Franklin v. LBT Corp., 5 Franklin 195 (1982); Karcesky v. Laria, 14 Beaver 238 (1951).

Unfortunately, the Superior Court has been insisting that the party seeking late joinder must justify the delay as a condition of extension. See: Commercial Banking Corp. v. Culp, 297 Pa. Super. 344, 443 A.2d 1154 (1982); Desiderio v. R&R Tire Center Inc., 242 Pa. Super. 135, 363 A.2d 1197 (1976); Moore v. Howard P. Foley Co., 235 Pa. Super 310, 340 A.2d 515 (1975); compare note [4] ante.[5] That is the rule additional defendant Hendrickson relies

---

5. In Potter Title and Trust. v. Lattavo Bros. Inc., 370 Pa. 374 (1952), the Supreme Court's initial decision on late joinder, the court affirmed the lower court's refusal of late joinder for want of sufficient excuse for delay (16 months); Justice Musmanno dissented on the ground of multiplicity of suits, saying (379):

"With the exclusion of the railroad company as an additional defendant, Lattavo Brothers, in the event of a verdict against it, will in all probability bring suit against the railroad company for contribution which will mean another trial, with all its expense and inevitable delays. It was to avoid that very hardship and concomitant confusion of responsibility that the procedure of joining additional defendants was instituted."

That court's next late joinder decision was Coppage v. Smith, supra, which allowed late joinder to avoid a multiplicity of suits, in full agreement with Musmanno's dissent in Potter-Lattavo. Although there are some factual differences between Potter-Lattavo and Coppage-Smith, the decisions are contrary in principle. Potter-Lattavo was not cited in Coppage, and has not been cited since or followed by the Supreme Court, all of whose decisions (cited and discussed in Lewandowski supra) are, in principle, consistent with Coppage and contrary to Potter-Lattavo which we think has thus been effectively discredited although the Superior Court appears to have resurrected its reasoning.

on here. That rule virtually elevates the 60 day rule into a right of the party proposed to be joined, whether or not he is prejudiced by reason of lateness, and leaves the cause of judicial economy go begging amidst meaningless hassles over the cause for delay. Apparently perceiving this logic and its consequences, some courts spend no time on battles over "cause shown" for extension under Rule 2253, and merely order the joinder on the court's motion under Civil Rule 2232(c), which provides in relevant part as follows:

"At any stage of an action, the court may order the joinder of any additional person who could have joined or could have been joined in the action and may stay all proceedings until such person has been joined."

That is the course taken by Judge Shaulis of this court in Datko v. Ott et al., 42 Somerset L. J. 379, 30 D.&C.3d 338 (1983), following Marsh v. Stroud Ford Inc., 51 D.&C.2d 331 (1970) and Tinari v. Peter J. Salmon Co., 79 Montgomery 342 (1961); to the same effect is Clendinin v. Glise, 20 Adams 97 (1978); and all of those decisions are consistent with the Supreme Court's opinion in Coppage v. Smith, supra, 404, citing Rule 2232(c), supra, as a proper basis for joinder under such circumstances.

In this case, plaintiffs' claims are based on a defective pin or bolt allegedly manufactured by Rockwell; the basis for Rockwell's joinder of Hendrickson is based on allegations that Hendrickson, not Rockwell, manufactured the part. It would be foolish indeed to become distracted from the juridical need for joinder here, by a useless debate over why it took so long to accomplish the joinder, or who is at fault for delay. Compare Upstill v. Jamesway (no. 4), supra. As stated in Dwyer v. Brandl et al., 43 Somerset L. J. 120 (1984):

"To disallow this joinder effort to determine in a single action which of two insurers is liable and to require separate actions, would bespeak an inefficient judicial system indeed."

Whether there is "just cause" under Civil Rule 2253 for the extension of time granted, or sufficient reason for ordering the joinder sua sponte under Rule 2232(c), the result is the same: the preliminary objections must be overruled and the joinder approved.

The objections here also complain of the fact that the extension of time for joinder was granted ex parte without notice to the party proposed to be joined, Hendrickson. As we said in Commonwealth v. Penner (No. 2), supra, 375:

"If defendants' argument had to rest entirely on the extension order of December 28, 1977, we would be hard put to sustain it, because it was an ex parte order without notice to plaintiff."

Obviously, Hendrickson must have notice and an opportunity to be heard before this extension order, or any order affecting its substantial rights, can be given effect. While the better practice is to give notice prior to presentation of the petition or before the order is made, Hendrickson is not harmed by the ex parte procedure, because it is now given the opportunity to make any challenge to the late joinder which it might have made when the application was presented and before the order was made. See Barkman v. Washington Mutual Insurance Co., 26 Somerset L. J. 230, 233 (1970). We are here following the procedure approved in McDevitt v. Avis Rent-A-Car Systems Inc., 443 Pa. 49, 277 A.2d 815 (1971), in a similar situation, where the court said (52):

". . . if the proposed additional defendant is not given an opportunity to be heard at the time of the

original exercise of that discretion [to extend time for joinder], he should at least be given a later opportunity to have the decision properly considered."

## ORDER

Now, June 18, 1984, the preliminary objections of Hendrickson Manufacturing Company to the joinder complaint are overruled, with leave to file a responsive answer thereto within 30 days.