# Cassidy v. Crozer Chester Medical Center

C.P. of Delaware County, no. 07-08172.

*Shannin Specter, Michael A. Trunk, and Earlie L. Francis,* for plaintiffs.

*Benjamin A. Post,* for defendant Crozer Chester Medical Center.

*Kathleen Foley Burke,* for defendant Moss.

*Stephen A. Ryan,* for defendant Meltz.

BURR, *J.,* November 10, 2010—The plaintiffs, Dawn and Anthony Cassidy, as co-administrators of the Estate of Brynn Elizabeth Cassidy, deceased, and Dawn Cassidy and Anthony Cassidy, individually, and in their own right (hereinafter "plaintiffs"), have appealed from this court's denial of their motion for post-trial relief and entry of judgment in favor of the defendants, Crozer Chester Medical Center (hereinafter "CCMC"), et alia. The plaintiffs have submitted as their one claim of error whether the court properly excluded an "Event Follow Up" form upon which a CCMC nurse had checked a matter listed under the heading "Medication Event Data" indicating that an error of that kind had been the cause of Brynn Cassidy's death.[1] Since medication error has never

---

1. The entire three-page set of documents in their unredacted form, includes a first page not propounded to the plaintiffs bearing the heading, "EVENT REPORT" and "CONFIDENTIAL - *Not for distribution*" and seeks the recording of information under the headings, "Event Data"; "Event Type"; "Injury Resulting" (beside which appears the single handwritten notation of "Fetal Death"); "Witnesses"; and "Signatures", and the handwritten signatures of two individuals, "C. Kazanjian, RN" and that of her supervisor, "Margaret T. Speicher", appearing under the

been alleged by the plaintiffs as a theory of recovery in

last heading, with both of these individuals having dated their completion of the first page of the within forms as occurring on July 5, 2006. The second page is headed "EVENT FOLLOW UP CONFIDENTIAL - This is a peer review document and may be protected by applicable law. *Not for distribution*" followed by six headings separating different sections thereof: "EVENT INFORMATION", "A. PATIENT FALLS", "B. MEDICATION/IV/TRANSFUSION RELATED - Complete reverse side", "C. EQUIPMENT/SUPPLIES RELATED EVENTS", "D. ALL OTHER EVENTS - Describe possible causes", under which is hand written the current status and request to evaluate Baby Brynn's condition, with this notation being redacted from the copy supplied by CCMC to the plaintiffs. The signature appearing at the bottom of this second page is Ms. Speicher's, beside which appears the date of July 5, 2006. The third page bears the heading at its very top of "MEDICATION EVENT DATA", allowing for the inference that it is a copy of the reverse side of the second page referenced under the section with the heading "B. MEDICATION/TRANSFUSION RELATED - Complete reverse side". Directly beneath the heading "MEDICATION EVENT DATA" on this third page appear six unmarked, albeit checkable, items for "Primary Error Type", with choices for - "Wrong drug", "Wrong dose", "Omitted dose", "Wrong route", "Wrong time", "Wrong Pt.", and "Other", plus a line for stating the number of doses involved "For wrong dose", had it been thought to have been administered to a patient. Following this first group of checkable categories are six more such items under the heading, "Event Severity (check one only)": "1 - Error occurred, no harm to patient"; "2 - Error occurred, increased monitoring only; "3 - Error occurred, change in VS, add'l labs, no permanent harm"; "4 - Error occurred, required add'l treatment, increased LOS"; "5 - Error occurred, permanent harm to patient"; and " 6 - Error resulted in patient death". It is to the left of Item #6 that an unexplained check mark appears to indicate:

"Error resulted in patient death." There are two other section headings: "CONTRIBUTING CAUSES OF EVENT", beneath which, there appear no markings; and "EVENT ANALYSIS" followed by instructions to "Include additional Information such as staffing patterns, activity level, patient outcome, action plan and conclusions" under which Nurse Kazanjian penned her observations of Mrs. Cassidy's arrival in the ER following the accident and notes the summoning of physicians to treat her. This handwriting was the only other redaction from this document when it was supplied by CCMC to the plaintiffs. There is no mention whatsoever of any medication being administered to Mrs. Cassidy on this or any other of the three page collection of redacted and unredacted documents, the third bearing Nurse Kazanjian's signature only, and the date, "7-5-05." Crucially, there was no redaction of the checkmark appearing beside the item listed at the top of the third page thereof as "Error resulted in patient death." In addition, although the signatures of the CCMC employees who signed the redacted last two pages of this

this medical malpractice action and the plaintiffs never· deposed the nurse who made the entry, the court appropriately excluded this evidence on grounds that it was irrelevant and would have been confusing and misleading for the jury under Pennsylvania Rules of Evidence 402 and 403.

Brynn Elizabeth Cassidy died in utero at the defendant CCMC during the afternoon of July 5, 2006 subsequent to her mother's injuries sustained in a motor vehicle collision that morning. The plaintiffs charged the defendants with negligence in the failure to properly monitor the decedent's well-being while in utero and to timely diagnose the abrupted placenta suffered by Mrs. Cassidy in the accident. Following a three week long trial, a jury entered a verdict in favor of the defendants with the finding that the conduct of none of them had fallen below the applicable standard of medical care. Denial of the plaintiffs' motion for post-trial relief and the entry of judgment in the defendants' favor by order of this court gave rise to this timely filed appeal.

The plaintiffs have submitted the following concise statement of errors complained of on appeal:

"STATEMENT OF ERRORS

[10.] Plaintiffs pursue one issue on appeal.

[11.] The court erred and abused its discretion by precluding the Event Follow-Up form in its redacted form from evidence. CCMC voluntarily disclosed

---

three- page "Event Follow Up" form that CCMC provided to the plaintiffs in October of 2008 are clear and readable, neither of these employees was ever deposed by the plaintiffs.

the document in redacted form (thereby waiving any claimed privilege with respect to the unredacted portions of the document), the document was not privileged in the first instance, the document was not excludable as hearsay, it was relevant to matter being tried, and its probative value was not outweighed by the considerations set forth in Pa.R.E. 403. The [t]rial [c]ourt erred and abused its discretion whatever its reasons may have been for precluding the document. This error prejudiced and affected the outcome of the trial, necessitating a new trial on all issues and [d]efendants." (plaintiffs' Concise Statement of Errors Complained of on appeal, p. 5)

*Preclusion of CCMC "Event Follow Up" Form*

The plaintiffs proffered, in their motion for post-trial relief, the following timeline referencing their efforts to obtain discovery of the within "Event Follow Up" form from CCMC:

1. July of 2007 - Plaintiffs' first set of interrogatories and request for production of documents were propounded on CCMC. (plaintiffs' motion for post-trial relief, ¶2)

2. November of 2007 - Plaintiffs' filed a motion to compel discovery against CCMC. (*Id.*, ¶3)

3. January 8, 2008 - The court granted plaintiffs' motion to compel and ordered CCMC to provide responses to plaintiffs' discovery requests. (*Id.*, ¶4)

4. January 17, 2008 - CCMC served its answers and objections to plaintiffs' discovery requests wherein CCMC objected to the provision of certain information

and documents including a "Confidential Event Report" on grounds of preclusion pursuant to the Peer Review Protection Act, 63 Pa.C.S. § 425.1, et sequitur.[2] (*Id.*, ¶ 5) CCMC additionally served a Privilege Log stating it would not produce a 3-page "Confidential Event Report reflecting date of July 5, 2006" pursuant to the Peer Review Protection Act. (*Id.*; CCMC's first Privilege Log appended as Exhibit B to plaintiffs' motion for post-trial relief)

5. May of 2008 - Plaintiffs propounded a first set of supplemental interrogatories and first set of

---

2. The applicable provision of the Peer Review Protection Act, 63 Pa.C.S. § 425.4, "Confidentiality of review organization's records," provides:

"The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions or other actions of such committee or any members thereof: Provided, however, That information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil action merely because they were presented during proceedings of such committee, nor should any person who testifies before such committee or who is a member of such committee be prevented from testifying as to matters within his knowledge, but the said witness cannot be asked about his testimony before such a committee or opinions formed by him as a result of said committee hearings." 63 Pa.C.S. §425.4.

The "Definitions" section of the Act, 63 Pa.C.S. § 425.2, describes "Peer Review," in relevant part, as "the procedure for evaluation of professional health care providers of the quality and efficiency of services ordered or performed by other professional health care providers, including practice analysis, inpatient hospital and extended care facility utilization review, medical audit, ambulatory care review, claims review, and the compliance of a hospital, nursing home or convalescent home or other health care facility operated by a professional health care provider with the standards set by an association of health care providers and with applicable laws, rules and regulations..." Pa.C.S. 63 § 245.2.

supplemental requests for production of documents and things to all defendants. (*Id.*, ¶ 6)

6. June of 2008 - Plaintiffs filed a second motion to compel a more specific answer to their discovery requests. (*Id.*, ¶ 7)

7. September 11, 2008 - the court granted plaintiffs' second motion to compel and ordered CCMC to produce full, complete responsive and verified answers to plaintiffs' interrogatories and document requests. (*Id.*, ¶ 8)

8. October 2008 - CCMC served its answers to the supplemental interrogatories and first set of supplemental requests for production of documents and things to all defendants, wherein CCMC provided a second privilege log stating (1) that a two-page "Confidential Event Report reflecting date of July 5, 2006" was protected by the Peer Review Protection Act, and (2) that CCMC would produce a redacted version of that document to the plaintiffs. (*Id.*, ¶9; CCMC's second privilege log appended as Exhibit C to the plaintiffs' Motion for Post-Trial Relief)

9. October 8, 2008 - CCMC produced on or about this date, a redacted two-page copy of the "Crozer Keystone Health System Event Follow-Up" form prepared by CCMC nurses on July 5, 2006, the date of Brynn Cassidy's death. The form produced by CCMC was two pages long, although originally identified as being three pages long in the first privilege log provided to the plaintiffs. (*Id.*, ¶ 10; CCMC's first privilege log appended as Exhibit B to plaintiffs' motion for post-

trial relief; see also fn 1, supra)

10. September 25, 2009 - Plaintiffs filed a third motion to compel discovery. (*Id.*, ¶ 11)

11. October 19, 2009 - Date of this court's order granting the foregoing motion and compelling CCMC to serve "full, complete, responsive and verified responses" to plaintiffs' discovery requests or risk the imposition of sanctions. (*Id.*, ¶ 12)

12. December 22, 2009 - Counsel for plaintiffs, Earlie Francis, sent a letter bearing this date to CCMC counsel, Matthew Colavita, requesting an unredacted copy of CCMC's "Event Follow-Up" form dated July 5, 2006. (*Id.*, ¶ 13)

13. January 8, 2010 - Plaintiffs filed a motion for sanctions against CCMC for not complying with the order of October 19, 2010 to the extent of providing documents requested in the December 22 letter referenced immediately hereinabove. (*Id.*, ¶ 14)

14. Between January 8 and January 27, 2010 - CCMC responded to plaintiffs' motion for sanctions on the latter date by stating that it had supplied the plaintiffs with a redacted copy of the "Event Follow Up" form. (*Id.*, ¶ 15). Counsel for CCMC notified this court by correspondence dated January 27, 2010 that it had responded to all of plaintiff's requested discovery, with the suggestion that the "Event Follow Up" form had been redacted so as to comply with the Pennsylvania Peer Review Protection Act. (*Id.*, ¶¶16-17; Letter appended as Exhibit E to plaintiffs' motion for post-

trial relief)

15. January 28, 2010 - Plaintiffs' counsel, Michael A. Trunk wrote to the court to argue plaintiffs' entitlement to an unredacted copy of the "Event Follow Up" form, with a copy of the redacted form accompanying this letter. (*Id.*, ¶ 18; Letter appended as Exhibit F to plaintiffs' motion for post-trial relief)

The trial of plaintiffs' case began on February 1, 2010. Plaintiffs sought admission of CCMC's "Event Follow Up" form pursuant to Pennsylvania Rules of Evidence 401,[3] 402[4], 803(6)[5] and 803(25)[6]. (Plaintiffs' memorandum of law in support of motion for post-trial relief, p. 9) Plaintiffs contended that the documents were relevant and admissible under Pennsylvania Rules of

---

3. Pennsylvania Rule of Evidence 401 (Definition of "Relevant Evidence") provides: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401.

4. Pennsylvania Rule of Evidence 402 (Relevant evidence generally admissible; irrelevant evidence inadmissible) provides: "[a]ll relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible," Pa.R.E. 402.

5. Pennsylvania Rule of Evidence 803(6) [Excepts, in relevant part, from the hearsay rule] "[a] memorandum, report, record. . in any form, of acts, events, or conditions made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, or record..." Pa.R.E. 803.6.

6. Pennsylvania Rule of Evidence 803(25) [Excepts, in relevant part, from the hearsay rule] "[a]dmissions by a party opponent [if] [t]he statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity, or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship...." Pa.R.E. 803 (25).

Evidence 401 and 402, and admissible as an exception to the hearsay rule as a business record prepared by the defendant's employees during the course and scope of their employment at the time of Brynn Cassidy's death pursuant to Pennsylvania Rule of Evidence 803(6). (*Id.*). Plaintiffs believed and averred that, inasmuch as the document invited the preparer to characterize the "Event Severity" with options ranging from "Error occurred, no harm to patient" to "Error resulted in patient death," the checking of the latter item by the nurse who prepared it constituted an admission by a party opponent pursuant to Pennsylvania Rule of Evidence 803(25). (*Id*)

The court held a sidebar conference on February 8, 2010 to hear oral argument on plaintiffs' request to admit this document, and again in the robing room of the courtroom the next day, February 9, 2010. (Transcript of 2/8/10 sidebar conference, Exhibit G appended to plaintiffs' motion for post-trial relief; transcript of 2/9/10 robing room conference, Exhibit H appended to plaintiffs' motion for post-trial relief) At sidebar, plaintiffs' counsel introduced his bid for the court to admit CCMC's "Event Follow Up" form by informing the court that he was in possession of the redacted form about which he could cross-examine its authors, but that he preferred the unredacted version on grounds that it was not privileged and was admissible into evidence according to the case authority of *Atkins v. Pottstown Memorial Medical Center*, 634 A.2d 258 (Pa. Super. 1993), which was decided nine years prior to the effective enactment date of the MCARE Act on May 19, 2002. (Exhibit G to plaintiffs' Memorandum in Support of Motion for Post-Trial Relief - 2/8/10 N.T. 1-2) However, the "incident report" ruled admissible as

a business record by the appellate court in *Atkins* had been prepared by a hospital risk manager, was otherwise available from original sources, was not derived nor part of an evaluation or review by a peer review committee, and was based on information also available to the plaintiffs. *Id.*, 634 A.2nd at 260. The *Atkins* court also noted that, inasmuch as information set forth in the subject "incident report" pertained to conduct that the jury had deemed to be negligent, and did not address conduct found not to be negligent on the part of a nursing defendant, its admission did not affect the verdict and could not necessitate a new trial. *Id.*, 634 A.2nd at 260-261. In like manner, deeming CCMC's "Event Follow Up" form to be inadmissible could not have affected a defense verdict in which the administering of medication in a negligent manner was never presented as a theory of recovery in the plaintiffs' case. (7/26/10 N.T. 10).

Counsel for CCMC responded that this document was privileged under the Peer Review Protection Act, 63 Pa.C.S. 425.1, et sequitur, for having been prepared with the expectation that "there was going to be a peer review" in which Nurse Kazanjian had participated. (Exhibit G to plaintiffs' memorandum in support of motion for post-trial relief -2/8/10 N.T. 2-3) When CCMC's attorney pointed out that the face of the document evinced its purpose as peer review oriented, plaintiffs' counsel replied that he hadn't received the full three-page version of the "Event Follow Up" which, in his view, constituted an admission by a party opponent. (*Id.*, 2/8/10 N.T. 4-5) The sidebar argument concluded at that point and resumed the next day in the robing room after the court had conducted an in camera review of the entire unredacted three page

document described in footnote 1, supra. The court noted twice during this proceeding that the redacted portions seen only on the last two pages of this document merely described the facts of the incident that had already been thoroughly covered in the trial testimony over the course of the previous eight days of the trial. (Exhibit H to plaintiffs' memorandum in support of motion for post-trial relief - 2/9/10 N.T. 3-4, 16-17) Plaintiffs' counsel said of the two pages thereof that he had received there, indeed, appeared the unredacted checkmark by a nurse made on the day of the incident indicating that "error had resulted in patient death." (*Id.* - 2/9/10 N.T. 4-6)

Plaintiffs' counsel admitted that he had not yet heard from any witness on the defense side that they agree there was such an error, to which the court replied that he probably would not hear that from the defense side of the case. (*Id.* - 2/9/10 N.T. 6) Plaintiffs' counsel insisted that he would like to call the authors of the reports to find out what information they had, where it had come from, whether they had been Dawn Cassidy's caretakers on the day of the incident, and why the conclusion was reached that an error resulted in patient death. (*Id.* -2/9/10 N.T. 6-7) Counsel for CCMC rejoined that the document had been reported as privileged in January of 2008, and that Nurse Cathy Kazanjian had told him in an interview that her checking of the box to indicate "error had resulted in patient death" had been a mistake. (*Id.* - 2/9/10 N.T. 7-8) Plaintiffs' counsel replied that, even though his copy of the page on which Nurse Kazanjian's check mark appeared was not headed "Medication Event Data" and listed the categories pertaining to "wrong drug," "wrong

dose" et alia, he felt that, if Nurse Kazanjian had checked off that "error resulted in patient death," for any other reason, he was entitled to explore it with her. (*Id.* - 2/9/10 N.T. 8-11)

Counsel for CCMC then retorted that the report had been in plaintiffs' counsel's hands for two years and he had yet to depose Nurse Kazanjian who had filled out the assertedly privileged document in anticipation of a peer review process in which she, herself, had participated, and that the document was privileged not only under the Peer Review Protection Act, but also under section 11(a) of the Medical Care Availability and Reduction of Error ("MCARE") Act, 40 Pa.C.S. §1303.311(a).[7] (*Id.* - 2/9/10 N.T. 10-12) Counsel for CCMC related that the policy reason behind both statutory provisions was to prevent a chilling effect on the willingness of hospital personnel

---

7. § 1303.311. Confidentiality and compliance
(a) Prepared materials. - Any documents, materials or information solely prepared or created for the purpose of compliance with section 310 (b) (patient safety committee responsibilities) or of reporting under section 304 (a)(5) (contracting for collection of data, e.g.) or (b) (allowing for anonymous reports to patient safety committee), 306 (a)(2) (patient safety committee responsibilities to receive reports of serious events) or (3) (to investigate reports of serious events), 307 (b) (3) (patient safety committee's responsibility for establishing a system for reporting serious events), 308 (a) (reporting and notifying patient safety committee of the occurrence of serious events), 309 (4) (report to patient safety committee), 310 (b)(5) (quarterly report to patient safety committee), or 313 (medical facility reports and notifications) which arise out of matters reviewed by the patient safety committee pursuant to section 310 (b) (patient safety committee responsibilities) or the governing board of a medical facility pursuant to section 310 (b) (*id.*) are confidential and shall not be discoverable or admissible as evidence in any civil or administrative action or proceeding. Any documents, materials, records or information that would otherwise be available from original sources shall not be construed as immune from discovery or use in any civil or administrative action or proceeding merely because they were presented to the patient safety committee or governing board of a medical facility.

to fill out such forms, and that there was nothing in the instant documents that had not already come into plaintiffs' counsel's knowledge through discovery. (*Id.* - 2/9/10 N.T. 12-13) Plaintiffs' counsel then claimed that the name of the person who filled out the second page of the documents had been blacked out, and stated later that he did not know her identity, although Nurse Kazanjian's signature does appear next to the redacted material to which he was referring. (*Id.* - 2/9/10 N.T. 13, 22; Exhibit C appended to plaintiffs' memorandum in support of post-trial relief) And, while conceding that he had the redacted portion of the last two pages of the report for two years, he wanted the unredacted version and had sought sanctions against CCMC for not providing it. (*Id.* - 2/9/10 N.T. 13-14) When told again by the court that the material redacted from the documents set forth nothing indicating what went wrong in the treatment of Mrs. Cassidy or suggestions as to how to prevent any such thing from happening in the future, and that what had been said therein had been covered in eight days of trial testimony, and had evinced no "smoking gun," or anything "exciting" or probative at all, plaintiffs' counsel asserted that the document was, therefore, not a peer review intended document and thus not privileged. (*Id.* - 2/9/10 N.T. 15-18)

When plaintiffs' counsel stated his intention to question Nurse Kazanjian at trial about the subject check mark, CCMC's attorney responded that plaintiffs' counsel could question her about what happened on the day in question without delving into why she had placed the check mark on the document, and that she could have been deposed in that light, but that her deposition had never been taken. (*Id.* - 2/9/10 N.T. 18-20) Plaintiffs' counsel replied that it

wasn't the people he was seeking by way of his motion for sanctions, but of the unredacted "Event Follow Up" report, and that he could call the people to testify at the trial if he wished.[8] (*Id.* - 2/9/10 N.T. 20-21)

The court then introduced a discussion of case authorities relevant to the discoverability (as opposed to admissibility) of the instant "Event Follow Up" form, the first being *Congdon v. Lancaster General Hospital*, 8 D & C 4th 596 (Lancaster Cty. 1990). (*Id.* - 2/9/10 N.T. 21-22) *Congdon* involved the court's denial of a motion to compel production of a hospital incident report arising from a patient fall because the Peer Review Protection Act, supra, precluded its discovery where the plaintiffs had not met their burden of providing a showing in the record of its use or purpose, since none appeared on the face of the document itself. *Congdon v. Lancaster General Hospital*, supra, 8 D & C 4th at 599, citing to 63 Pa.C.S. §425.4.

This determination can be distinguished from the allowance of the discovery of an incident report routinely and contemporaneously prepared by nurses in conjunction with patient care. *Hanzsek v. McDonough*, 44 D & C 3rd 639 (Lehigh Cty. 1987). The *Hanzsek* court deemed the foregoing to meet the definition of "records otherwise available from original sources" that are excepted from confidentiality under the Peer Review Protection Act, even though the document at issue also had as its purpose the intended use in subsequent peer review proceedings.

---

8. It is here noted that, not only did plaintiffs' counsel not call Nurse Kazanjian as a trial witness, he had not taken her deposition by the time of oral argument on plaintiffs' motion for post-trial relief on July 26, 2010. It is further noted that during that hearing, plaintiffs' counsel agreed that no issue involving the subject of medication had ever been raised in the plaintiffs' case. (7/26/10 N.T. 10)

*Hanzsek v. McDonough,* supra, 44 D & C 3rd at 644-645; 63 Pa.C.S. §425.4. Similar to the incident report in *Hanzsek,* from which the court was able to ascertain its purpose from the evidence of record, the two page "Event Follow Up" form provided to the within plaintiffs by the defendant, CCMC, states specifically that it is a confidential peer review document not intended for distribution. However, counsel for plaintiffs insists that, unlike the incident report in *Congdon,* the instant "Event Follow Up" form, while expressly stating its intended use as a peer review document, was discoverable as an "original sources" record filled out by the ER nurses who were present in that facility when Mrs. Cassidy was brought there following her automobile accident, pursuant to Section 425.4 of the Peer Review Protection Act as interpreted in *Hanzsek,* supra, as well as a business record under the *Atkins* case, supra. (*Id.* - 2/9/10 N.T. 23-24, 36-27, 31-32, 44)

Plaintiffs' counsel further insisted that his receipt of the redacted "Event Follow Up" form showing the subject check mark waived redaction of the document despite the claim of privilege thereof made ab initio by virtue of the document's presence in CCMC's privilege log. (*Id.* - 2/9/10 N.T. 34-36) Counsel for CCMC suggested that Nurse Kazanjian could be called to testify as to the circumstances surrounding her completion of the "Event Follow Up" form, but that the report itself should not be admitted into evidence. (*Id.* - 2/9/10 N.T. 46-48) Plaintiffs' counsel responded that he intended to place Nurse Kazanjian on the stand and ask her about the mistake, whereupon the court ruled the document privileged, remarking that the equities fell more on the side of preserving open

discussion to improve hospital and medical care than in allowing plaintiffs' counsel to explore the circumstances surrounding the filling out of the "Event Follow Up" form. (*Id.* - 2/9/10 N.T. 48-49)

Even if this court's ruling that the "Event Follow Up" form was privileged, and therefore not admissible, is deemed to be in error, this error is harmless because the decision to preclude it from the trial evidence is strongly supported by its utter lack of relevance pursuant to Pennsylvania Rule of Evidence 402, inasmuch as there was no allegation in the plaintiffs' case that CCMC's putative negligence had anything to do with medication. Further grounds to preclude the "Event Follow Up" form are grounded in Pennsylvania Rule of Evidence 403.[9] Not only would allowing the redacted portions of the report into evidence be cumulative to evidence already heard by the jury, but the irrelevant unredacted check mark denoting that a medication "error resulted in patient death" would mislead and confuse the jury regarding the claims upon which they were to base their verdict, not to mention the unfair prejudice such evidence would inflict upon the defendant, CCMC, in that regard. Pa.R.E. 403.

Documents generated specifically for the peer review process and are so used, as in the instant case, are not discoverable. 63 Pa.C.S. 425.4; 40 Pa. C.S. 1303.311(a); *Dodson v. Deleo,* 872 A.2d 1237 (Pa. Super. 2005); *Treible v. Lehigh Valley Hospital, Inc.* 75 Pa. D & C 4th

---

9. Pennsylvania Rule of Evidence 403 (Exclusion of relevant evidence on grounds of prejudice, confusion or waste of time) provides: "Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403.

22 (Lehigh Cty. 2005)(documents not utilized by peer review committee deemed admissible into evidence). Whatever grounds are raised by the plaintiffs to support the claims of discovery and admissibility of this document are of no moment when stacked against its irrelevance and immateriality to the facts in issue in their case. The plaintiffs' should not be allowed to present a mistaken checkbox as the admission of a party opponent because it is undisputed that no medication error was alleged in this case, and indeed, never took place. There was thus no prejudice to the plaintiffs from the exclusion of this evidence.

## Conclusion

Issues focusing upon the admission or exclusion of evidence are within the sound discretion of the trial court and will only be reversed where there is a clear abuse of discretion. *Henry v. McCrudden*, 133 Pa. Cmwlth. 231, 575 A.2d 666, *appeal denied*, 526 Pa. 651, 585 A.2d 470 (1990)(Table); *Hoffmaster v. County of Allegheny*, 121 Pa. Cmwlth. 266, 550 A.2d 1023 (1988), *appeal denied*, 522 Pa. 606, 562 A.2d 828 (1989 (Table); *Juniata Foods, Inc. v. Mifflin County Development Authority*, 87 Pa. Cmwlth. 127, 486 A.2d 1035 (1985); *Catina v. Maree*, 272 Pa. Super. 247, 415 A.2d 413 (1979), *rev'd. on evidentiary grounds*, 498 Pa. 443, 447 A.2d 228 (1982). A wide degree of latitude is granted to the trial court in determining what evidence is to be admitted and that which is not admissible at trial. *Lynch v. McStome & Lincoln Plaza Assoc.*, 548 A.2d 1276 (Pa. Super. 1988). The exclusion of evidence which is irrelevant, confusing, misleading, cumulative or prejudicial is within the sound discretion of the trial court and its decision thereon will not be disturbed. *Concorde*

*Investments, Inc. v. Gallagher*, 497 A.2d 637 (Pa. Super. 1985).

Abuse of discretion by a trial court must rest upon a showing of clear and convincing evidence. *Stevenson v. General Motors Corporation*, 513 Pa. 411, 521 A.2d 413 (1987); *Dalton v. Dalton*, 409 Pa. Super 258, 597 A.2d 1192 (1991); *Solomon v. Baum*, 126 Pa. Cmwlth. 646, 560 A.2d 878 (1989), *appeal denied.*, 525 Pa. 636, 578 A.2d 930 (1990)(Table). In applying this standard, it is acknowledged that an abuse of discretion is not a mere error in judgment, but if in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as demonstrated from the evidence or the record, a court's discretion has been abused. *Ludmer v. Nernberg*, 640 A.2d 939 (Pa. Super. 1994), *appeal denied*, 541 Pa. 652, 664 A.2d 542 (1995) (Table), *cert. den.*, 517 U.S. 1220, 116 S.Ct. 1849 (1996); *Spitzer v. Tucker*, 591 A.2d 723 (Pa. Super. 1991), *appeal denied*, 530 Pa. 645, 607 A.2d 255 (1992)(Table). The evidence plaintiffs contended to have wrongly been precluded was of a report that suggested a medication error in a case in which no such allegation was made, and in fact, did not occur in the first place. Moreover, admission of the material redacted from the subject document would have been misleading, confusing, unfounded in law and in fact, and altogether would have been of no assistance whatsoever in the jury's deliberations.

Finally, whether or not this document was inadmissible as privileged, the threshold task for a trial judge in determining the admissibility of evidence is whether the evidence is relevant. *Henery v. Shadle*, 661 A.2d 439,

444 (Pa. Super. 1995), *appeal denied*, 542 Pa. 670, 668 A.2d 1133(1995)(Table); *General Equipment Mfrs. v. Westfield Ins. Co.*, 430, 635 A.2d 173, 182 (Pa. Super. 1993), *appeal denied*, 537 Pa. 663, 644 A.2d 1200 (1994) (Table); *Whyte v. Robinson*, 617 A.2d 380, 383 (Pa. Super. 1992). Pennsylvania courts have considered evidence relevant when it helps to establish a fact in issue at trial, or make that fact more or less probable. *Burrell Const. & Supply Co. v. Straub*, 656 A.2d 529, 534 (Pa. Super. 1995), *appeal denied*, 542 Pa. 655, 668 A.2d 1120 (1995) (Table); *Whistler Sportswear Inc., v. Rullo*, 433 A.2d 40, 47 (Pa. Super. 1981). The plaintiffs' claim of error, however, concerned evidence supporting only their own self-serving view that, if Nurse Kazanjian were questioned, she would tell them the nature of some other error that she thought might have resulted in the death of Brynn Cassidy. However, the plaintiffs' utter failure to seek a deposition or present the trial testimony of Nurse Kazanjian whereby she could have been queried regarding her memory of the events transpiring in CCMC's emergency room following Dawn Cassidy's admission on July 5, 2006, renders this assertion not only impertinent, but incredible.

A new trial will only be awarded where the verdict is so contrary to the evidence as to shock the court's sense of justice. *Palange v. City of Philadelphia, Law Department*, 640 A.2d 1305 (Pa. Super. 1994), *appeal denied*, 542 Pa. 649, 666 A.2d 1057 (1995); *Giovanetti v. Johns-Manville Corp.*, 539 A.2d 871 (Pa. Super. 1988). The case authority of *Atkins v. Pottstown Memorial Medical Center*, supra, rested on a finding by the court that, inasmuch as information set forth in the subject "incident report" did not address conduct found not to be negligent on the part of a

nursing defendant, its admission did not affect the verdict and could not necessitate a new trial. *Id.*, 634 A.2d at 260-261. In like manner, deeming CCMC's "Event Follow Up" form to be inadmissible could not have affected a defense verdict in a case in which a medication error had never been alleged as a theory of recovery.

For all of the foregoing reasons, this court's decision to preclude the "Event Follow Up" form completed by the defendant, CCMC's, emergency room nursing staff contemporaneously with the events surrounding Brynn Cassidy's death on July 5, 2006 from the trial evidence, was properly founded in the law and in fact, involved no abuse of this court's sound discretion, and should not be disturbed on appeal.

## Award of Costs and Fees Pursuant to 42 Pa.C.S.A. § 2503(9)

Costs and attorney fees are awardable to a litigant under 42 Pa.C.S.A. § 2503 upon a showing at any point in the proceedings that the opposing party acted in bad faith in pursuing or continuing to pursue a claim that is lacking in merit or with no basis in law or in fact, or in a manner deemed to be vexatious, dilatory, arbitrary, or obdurate for the purpose of delaying the end of litigation. The court hereby recommends to this honorable court that reasonable attorney fees and costs be awarded to the defendants under Pennsylvania Rule of Appellate Procedure 2744 if it should determine that the within appeal is frivolous or taken solely for delay or that the conduct of the plaintiffs, against whom costs are to be imposed is dilatory, obdurate or vexatious. In the alternative, the court requests remand of the matter

back to the trial court for a determination of the amount of damages authorized under 42 Pa. C.S.A. §2503. The plaintiffs' sole contention of erroneous preclusion of clearly irrelevant evidence is not supportable in fact or in law, utterly unfounded and, therefore, frivolous.

Appellate review of a trial court's order awarding attorney fees to a litigant is limited solely to determining whether the trial court palpably abused its discretion in making a fee award. *Thunberg v. Strause*, 545 Pa. 607, 682 A.2d 295 (1996). If the record supports a trial court's finding of fact that a litigant violated the conduct provisions of the applicable statute providing for the award of attorney fees, that award should not be disturbed on appeal. *Thunberg v. Strause*, supra, 682 A.2d at 299.

The statutory provision of 42 Pa.C.S.A. § 2503(9) expressly permits a trial court to award reasonable attorney fees to a litigant against an opponent who can be deemed to have brought suit (or otherwise) "vexatiously," if he filed suit, or in this case, continued the litigation without sufficient grounds in law or in fact and the matter served the sole purpose of annoyance. *Thunberg v. Strause*, 545 Pa. 607, 682 A.2d 295, 299 (1996); *Berg v. Georgetown Builders, Inc.*, 822 A.2d 810, 816 (Pa. Super. 2003); Black's Law Dictionary 1565 (6th Ed., reprinted in 1993). In setting forth such a guideline, the statute focuses attention on the opponent's conduct and on the relative merits of the opponent's claims. Where a litigant's claim has no reasonable possibility of success, coupled with the effect of prolonging the litigation and unnecessarily delaying the resolution of a matter, the litigant's conduct has been found to come within that envisioned by 42

Pa.C.S.A. §2503 permitting an award of attorney fees. *Berg v. Georgetown Builders, Inc.*, supra, 822 A.2d at 817; *In re Estate of Liscio*, 638 A.2d 1019, 1022 (Pa. Super. 1994), *appeal denied*, 539 Pa. 679, 652 A.2d 1324 (1994) (Table); *Bykowski v. Chesed, Co.*, 625 A.2d 1256, 1259 (Pa. Super. 1993).

In the instant case, the plaintiffs have filed an appeal where the odds of prevailing are utterly against them. The plaintiffs have never alleged medication error as a cause of Brynn Cassidy's death, and counsel for all of the parties have agreed that no such error ever occurred. The plaintiffs never deposed Nurse Kazanjian, whose name was readily discoverable from other witnesses deposed by the plaintiffs, if they could not, in fact, discern her name from the appearance of her signature on the unredacted portion of the "Event Follow Up" form. They could have availed themselves of this opportunity over the course of two years, and could have subpoenaed her trial testimony for her recollections of events leading up to Brynn Cassidy's demise on the day in question. Plaintiffs did not do so. They have never done so, even before argument on the within motion for post-trial relief took place on July 26, 2010.

In filing a motion for post-trial relief and this appeal raising the same untenable claim as before this court, plaintiffs have led the court to the ineluctable conclusion that they have done so to punish the defendants for prevailing in the cause of action brought against them, calling into play Sir Francis Bacon's observation that "[r]evenge is a sort of wild justice, which the more man's na-

■■■■■■■■

ture runs to, the more ought law to weed it out."[10]  Clearly, it istime to bring an end to the revenge being  visited upon the defendants and to weed this endless vexatious claim out of our judicial system.

---

10.  From *Of Revenge*, Bartlett, John, *Familiar Quotations*, p. 119 b (13th and Centennial Ed.) Little, Brown and Company, Boston (1955).